UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MALIHE KIANI, et al.,<br><br>Plaintiffs,<br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant. | Case No. 8:24-cv-00422-JDE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. 38] |

**I.**

**INTRODUCTION**

On November 7, 2024, Defendant United States Citizenship and Immigration Services ("USCIS") filed a Motion for Summary Judgment (Dkt. 38, "Motion"), with a supporting Declaration (Dkt. 38-1, "Decl."), and a Statement of Uncontroverted Facts (Dkt. 38-2, "SUF"). On November 14, 2024, Malihe Kiani ("Plaintiff") and Aliakbar Kiani ("Beneficiary") (together, "Plaintiffs") filed an opposition to the Motion (Dkt. 39, "Opp."), with a Response to USCIS's SUF (Dkt. 39-1, "RSUF"). USCIS filed a Reply on November 21, 2024. Dkt. 41 ("Reply"). The Motion was heard on December 5, 2024. For the reasons discussed hereafter, the Court GRANTS the Motion.

## II.

## BACKGROUND

In December 2012, Plaintiff, a U.S. citizen, filed a Form I-130 petition ("Petition") with USCIS on behalf of Beneficiary, her foreign national son, to classify him as a married son of a U.S. citizen. See Dkt. 1 ("Complaint"). On March 4, 2024, Plaintiffs initiated this action for an order directing USCIS to adjudicate the Petition, which they contend has been unreasonably delayed, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., and the Mandamus Act, 28 U.S.C. § 1361. Complaint at 4-5.

On June 24, 2024, USCIS filed a Motion to Dismiss, arguing it was under no mandatory, non-discretionary duty to adjudicate the Petition within a certain time and that Plaintiffs failed to plausibly allege that any delay in processing the Petition was unreasonable. See Dkt. 15 at 5, 9. The previously assigned District Judge denied USCIS's Motion to Dismiss, finding Plaintiffs had stated a claim under the APA and Mandamus Act to compel agency action, given USCIS is subject to a "mandatory, nondiscretionary duty to adjudicate the I-130 Petition within a reasonable time." Dkt. 20 at 2-3. The previously assigned District Judge further found the reasonableness of USCIS's delay was more appropriate for resolution at the summary judgment stage "in light of the almost 12-year delay in this case and Plaintiffs' claim that the average processing time for individuals in the same category as Plaintiff is approximately 7 years." Id. at 3. Following the parties' consent (Dkt. 28), the matter was reassigned to the undersigned U.S. Magistrate Judge. Dkt. 31.

## III.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial." White v. Las Vegas Metro. Police Dep't, 2021 WL 1109348, at *2 (D. Nev. Mar. 22, 2021) (citing Celotex, 477 U.S. at 323-24). "[A] moving defendant may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing'—that is, pointing out through argument—the absence of evidence to support plaintiff's claim." See Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000).

Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Id. at 324; see also Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (per curiam). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citation omitted); see also Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 257. Summary judgment cannot be avoided by relying solely on conclusory allegations or speculation unsupported

by facts. See Loomis v. Cornish, 836 F.3d 991, 997 (9th Cir. 2016) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (alteration in original) (citation omitted)); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). To show a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court may rely on the nonmoving party to identify the evidence that precludes summary judgment. See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The Court may not weigh evidence or make credibility determinations. Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994). Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., 475 U.S. at 587. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## IV.

## SUMMARY OF UNDISPUTED FACTS

### A. USCIS and I-130 Processing

Annually, USCIS Service Centers adjudicate approximately five to six million immigration-related petitions, applications, waivers, and requests, including the Form I-130 Petition for Alien Relative ("I-130"). Decl. ¶2. The Immigration and Nationality Act ("INA"), as amended, provides that U.S. citizens, U.S. nationals, and lawful permanent residents may petition for

certain noncitizen relatives to immigrate to the United States. Id. ¶3. Filing a Form I-130 starts the process to help a citizen's eligible relative apply to immigrate to the United States. Id. USCIS approves an I-130 petition when it verifies the underlying familial relationship claimed by the petitioners. Id.

It is undisputed that approval of an I-130 petition does not grant a noncitizen beneficiary lawful immigration status. Decl. ¶12. It is also undisputed that if the petitioner and beneficiary of an I-130 meet the eligibility requirements, the beneficiary may then pursue lawful permanent resident status by applying for an immigrant visa at a U.S. embassy or consulate if they are outside of the United States, or by applying for an adjustment of status while in the United States, although Plaintiffs purport to dispute the timing of the latter post-approval process, but do not cite to evidence in the record. See id.; RSUF ¶6. Immediate relatives of U.S. citizens are not subject to direct numerical limitations, but other family members in preferential immigrant categories are subject to Congressionally mandated annual quotas on the number of immigrant visas that may be issued. Decl. ¶5. The total number of family-based immigrant visas that can be issued each year ranges from 226,000 to 480,000. Id. Petitions are split into preference categories, each with maximum yearly visa allotments, with unused visas from higher preference categories reallocated to lower preference categories. See id. Married sons and daughters of adult U.S. citizens are in the third preference category, known as "F3." Id.

The Department of State monitors and allocates immigrant visas when they become available to potential immigrants. Decl. ¶6. The Department of State publishes a monthly Visa Bulletin to inform potential immigrant-applicants when visas in family-based and employment-based preference categories may be allocated to them and when the earliest date they may file an application for a visa. Id. The I-130 petition is assigned a priority date when

properly filed with the correct filing fee. 8 C.F.R. § 204.1(b) ("The filing date of a petition is the date it is properly filed and received by USCIS. That date will constitute the priority date."). Because of the quotas on family-based immigrant visas, this sometimes results in a situation where many noncitizen relatives who are the beneficiaries of approved I-130 petitions are not able to apply for a visa for multiple years and sometimes decades, depending on the visa classification and the visa applicant's country of nationality. Decl. ¶¶6-7.

USCIS prioritizes the adjudication of I-130 petitions based on when the Visa Bulletin shows an immigrant visa is available or will soon become available. Decl. ¶9. USCIS otherwise "generally" processes cases for which visas are available in the order received. Id. Plaintiffs do not dispute that USCIS considers visa availability at least in part, but contend that "USCIS['s] statement is contradictory, it states [petitions are] being processed in the order received, but simultaneously says it will approve them based on visa availability." RSUF ¶24. The Court does not find this to be a dispute of fact as USCIS speaks to how it processes cases "generally" in the order received, but will "prioritize" based on availability; there is no contradiction. To minimize confusion related to the adjudication of I-130 preference category petitions, the agency does not post a processing time in most instances. Decl. ¶9.

As Plaintiffs have not cited evidence in the Opposition that contradicts the evidence relied upon in the Motion, the Court finds that no genuine dispute of material fact exists here. See Fed. R. Civ. P. 56(e)(2). Nonetheless, the Court does consider Plaintiffs' arguments regarding the interpretation of the evidence and regulations relied upon by USCIS in the Motion, and the application of the facts to the law.

**B. The Petition**

On December 10, 2012, USCIS received Plaintiff's I-130 petition with supporting documentation. Decl. ¶4. Plaintiff's Petition was on behalf of her

married son, Beneficiary, an Iranian national. Id. USCIS records do not show Plaintiffs requested to expedite the adjudication and processing of the Petition. Id. The Petition was placed in category F3. Id. ¶4. The highest number of F3 immigrant visas that may be allocated in a given year is 23,400 plus any unused visas in the first and second preference categories, and the total number of immigrant visas (family-based and employment-based combined) that can be made available to individuals of any single foreign state is 7% of the total number of immigrant visas in any given year. Id. ¶5. The number of F3 visas to be allocated to any one country in any given year is therefore substantially lower than the overall 23,400-visa maximum. Id.

The September 2024 Visa Bulletin indicated that a potential visa recipient from countries other than China, India, Mexico, and the Philippines in the F3 category, like the Beneficiary, may expect to have an immigrant visa allocated to them if they were the beneficiary of an approved I-130 petition filed before April 1, 2010. Decl. ¶8. The September 2024 Visa Bulletin also indicated that an F3 immigrant visa applicant from Iran may apply for a visa if their approved I-130 petition was filed before January 1, 2011. Id. ¶¶8, 11; RSUF ¶19. Plaintiffs suggest that the December 2024 Visa Bulletin instead indicated that an F3 immigrant visa applicant from Iran may apply for a visa if their approved I-130 petition was filed before April 22, 2012. RSUF ¶19.

It is undisputed that if the Petition were approved today, Beneficiary would not be able to immediately apply for a visa, given a filing date of December 12, 2012. See Decl. ¶8; RSUF ¶21. USCIS asserts Beneficiary could face up to a 23-month wait; Plaintiffs suggest the wait could be as few as four months, citing the December 2024 Visa Bulletin, although Plaintiffs do not explain how to the December 2024 Visa Bulletin reflects a four-month waiting period or cite any other evidence in the record. See RSUF ¶¶21, 28. It is undisputed that a visa is currently not available for the Petition. Decl. ¶11.

## V.

## DISCUSSION

USCIS moves for summary judgment, arguing there is no dispute of material fact that USCIS's delay in processing the Petition was not unreasonable, entitling it to judgment as a matter of law. Motion at 2, 6. Plaintiffs oppose the Motion, but submit no evidence in opposition.

A court may compel agency action under the APA when the agency (1) has a clear, certain, and mandatory duty, and (2) has unreasonably delayed in performing such duty. Plaskett v. Wormuth, 18 F.4th 1072, 1082 (9th Cir. 2021). The Court first addresses the existence of a mandatory duty.

### A. USCIS Had a Mandatory Duty to Process the Petition in a Reasonable Time

Where an agency has a "clear, certain, and mandatory duty" to take a discrete action, a court may compel the agency to act where it has "unreasonably delayed" in performing that duty. See 5 U.S.C. § 706(1); Vaz v. Neal, 33 F.4th 1136 (9th Cir. 2022). Although USCIS is not under a "clear, certain, and mandatory duty" to adjudicate a claim within a specified time, 5 U.S.C. § 555(b) ("Section 555(b)") requires USCIS to act within a "reasonable time." The language of Section 555(b) states, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." The term "shall" is "mandatory language" (see Maine Cmty. Health Options v. United States, 590 U.S. 296, 310 (2020); see also Nat. Res. Def. Council, Inc. v. Perry, 940 F.3d 1072, 1078 (9th Cir. 2019)); and Section 555(b) imposes on an agency like USCIS "a duty to fully respond to matters that are presented to it under its internal processes." In re A Cmty. Voice, 878 F.3d 779, 784 (9th Cir. 2017). Processing of I-130 petitions like the Petition are no exception. See Andalib v. United States, 2024 WL 685945, at *5 (C.D. Cal.

Feb. 9, 2024) (citing Borzouei v. Bitter, 2022 WL 17682659, at *4 (S.D. Cal. Dec. 14, 2022)); accord Tesfaye v. Blinken, 2022 WL 4534863, at *5-6 (D.D.C. Sept. 28, 2022).

**B. The Petition Was Not Subject to an Unreasonable Delay**

1. Applicable Law

The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "The standard by which a court reviews this type of agency inaction is the same under both [5 U.S.C. § 706(1)] and the Mandamus Act, 28 U.S.C. § 1361." Andalib, 2024 WL 685945, at *4 (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)). To determine whether the agency's delay is unreasonable, the Court weighs the six factors set forth in Telecomm. Rsch & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ["TRAC"]. These factors have been endorsed by the Ninth Circuit. Indep. Min. Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997); Yavari v. Pompeo, 2019 WL 6720995, at *7 (C.D. Cal. Oct. 10, 2019) (applying TRAC factors for USCIS visa process). The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Indep. Min. Co., 105 F.3d at 507 (citing TRAC, 750 F.2d at 80).

No one factor alone is entirely determinative, but the first TRAC factor is considered the "most important factor," In re A Cmty. Voice, 878 F.3d at 786 (citing In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008)); and the fourth factor weighs heavily in favor of the agency when granting a plaintiff relief would only reorder existing competing agency priorities. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). But see Muwekma Tribe v. Babbitt, 133 F. Supp. 2d 30, 41 (D.D.C. 2000) ("[C]ompelling the agency to assign the plaintiff top priority may produce an inequitable result. However, this court concludes that the defendants' extensive delay in processing the plaintiff's petition is unjustifiable and without good reason"). Without any evidence regarding the State Department's motives, the sixth TRAC factor is irrelevant here.

2. "Rule of Reason" Under Factors One and Two

The first two TRAC factors are often considered together as the second factor can supply content for the "rule of reason." Andalib, 2024 WL 685945, at *5. Together, these factors assess whether the time for the agency to act is governed by a "rule of reason," as informed by any specific timetable established by Congress. TRAC, 750 F.2d at 80; Indep. Min. Co., 105 F.3d at 507 n.7. Congress has not set specific a timetable to process I-130 petitions. See Ahmed v. U.S. Dep't of State, 2024 WL 315705, at *5 (N.D. Cal. Jan. 26, 2024); Eljalabi v. Blinken, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022).

USCIS argues the first and second factors favor it, as its "visa availability approach" for processing petitions is based on "an identifiable rationale" absent a congressional timetable. Motion at 7-8, 10; see Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."). USCIS processes I-130 petitions based on country-by-country visa availability.

Decl. ¶9. Processing applications based on visa availability has been found to be a "rule of reason" under the first TRAC factor. See Jain v. Renaud, 2021 WL 2458356, at *2 (N.D. Cal. June 16, 2021) (collecting cases). Courts have likewise found that processing applications in the order they were filed is a "rule of reason." See Kamath v. Campagnolo, 2021 WL 4913298, at *3 (C.D. Cal. Aug. 13, 2021); Varghese v. Campagnolo, 2021 WL 4353124, at *3 (C.D. Cal. June 4, 2021). In addition, USCIS argues its delay is "directly linked to the rule of reason" because it is "not really a delay at all but rather is due to visa availability." Motion at 10. Courts will consider justifications for delays in assessing unreasonableness, including demand for visas in a country. See Khan v. Blinken, 2024 WL 3446432, at *8 (E.D. Cal. July 17, 2024) ("phased resumption of visa services following the four-month suspension in March 2020 due to the COVID-19 pandemic, persistent staffing shortages at the Islamabad Embassy, increased demand, and prioritization of processing special immigrant visas under the Afghan Allies Protection Act of 2009").

Even though each of USCIS's processing procedures (based on the order submitted and based on country-by-county visa availability) may satisfy the "rule of reason" requirement, this alone does not necessarily render a delay reasonable. See Barker v. U.S. Citizenship & Immigr. Servs., 2023 WL 7107257, at *3 (C.D. Cal. Sept. 11, 2023) (weighing first TRAC factor in favor of plaintiff-applicants where plaintiffs alleged "the ever-slowing rate at which USCIS processes applications is not justified by the visa availability approach, which dictates only the order in which applications are processed, and that this slow rate is not governed by any other rule of reason" at motion to dismiss stage); Liu v. Mayorkas, 2021 WL 2115209, at *4 (D.D.C. May 25, 2021) (finding that "[e]ven if USCIS's ordering system is perfectly rational, the agency could still be liable if it adjudicates each petition at an unjustifiably slow pace, resulting in unreasonably long overall wait times"). Of note, the

nearly twelve years spent processing the Petition is well beyond the six-year threshold at which courts have found delays in processing to be unreasonable. Siwen Zhang v. Cissna, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (collecting cases). Such a delay can overcome a recognized "rule of reason." See Yavari, 2019 WL 6720995, at *8; accord Memon v. Blinken, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023) (using "length of delay as a rough yardstick to determine whether that rule is, in fact, being applied").

The Court finds here, in the absence of a congressionally mandated process or timeframe, UCSIC's processing system is rational, but, considering the delay here of nearly 12 years, that finding is not itself determinative. Factors one and two are neutral here.[1]

3. Health and Welfare Interests Under Factors Three and Five

The third and fifth TRAC factors concern the impact of a delay on human health and welfare, as well as the nature of the interests prejudiced by the delay. See Indep. Min. Co., 105 F.3d at 507. These factors largely overlap and can generally be evaluated. Yavari, 2019 WL 6720995, at *8.

Plaintiffs argue that certain "critical options" are behind an I-130 application, including "humanitarian reinstatement in the event the petitioner passes away." Opp. at 16. Courts have recognized that the third and fifth TRAC factors favor I-130 petitioners who face potential family separation, see R. v. U.S. Citizenship & Immigr. Servs., 2023 WL 9197564, at *4 (C.D. Cal. Dec. 6, 2023) (collecting cases), including with no separate showing of potential

[1] Plaintiff's application has been pending longer than the average wait time (see Opp. at 27; Dkt. 20 at 3), but unreasonableness is not measured solely against agency averages. Saulnier v. Garland, 2024 WL 3566225, at *7 (D.D.C. July 29, 2024) (quoting Afghan & Iraqi Allies v. Blinken, 103 F.4th 807, 817 (D.C. Cir. 2024)) ("[P]ublished timeframes provide only 'averages' and, in any event, are not the measure, as a legal matter, of the reasonableness of agency delay. . . . [A]n agency's published timeline is 'only one consideration among many.'").

harm by petitioners, see Andalib, 2024 WL 685945, at *6 n.3 ("even if considered, [documents from therapist purportedly showing delay in beneficiary's visa application affected plaintiff's health] do not change the court's analysis"), and have found "sit[ting] in limbo" to be a sufficient interest for applicants for an immigration-related benefit. Islam v. Heinauer, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014). However, the Ninth Circuit has considered whether an evidentiary showing was made by a plaintiff in assessing the third and fifth factors. See Vaz, 33 F.4th at 1138 (holding as to asylum applicant's action to compel Executive Office for Immigration Review to complete its investigation of applicant's complaint against former attorney and report its investigation results, the third and fifth factors weighed against applicant where "[n]o evidence support[ed] the third and fifth factors—that the investigation delay [was] affecting [plaintiff's] health and welfare or causing him prejudice").

USCIS notes that Plaintiffs "make no particularized allegations of harm" connected to the third and fifth factors. Motion at 10. In response, Plaintiffs describe largely hypothetical harms that could be caused by the delays. Opp. at 30-33. These potential harms remain speculative and are not supported by evidence cited in the record, but the Court can see no basis for finding the third and fifth factors favor USCIS. Although the Court does not discount the uncertainties implicit in the delay Plaintiffs face, absent evidence of any specific harm or specific risk of harm not faced in all such delays, the third and fifth factors are best characterized as neutral. See Nosraty v. Oudkirk et al., 2024 WL 654556, at *3 (C.D. Cal. Jan. 2, 2024) (internal quotation omitted) (quoting Mohammad v. Blinken, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021)).

4. "Jumping the Line" Under Factor Four

The fourth TRAC factor concerns the effect of expediting an agency action on other agency actions of higher or competing priorities, including

others' pending administrative requests. Indep. Min. Co, 105 F.3d at 507; TRAC, 750 F.2d at 80. Courts will generally not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others. See Andalib, 2024 WL 685945, at *6 ("Courts have 'refused to grant relief, even though all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" (quoting Mashpee Wampanoag, 336 F.3d at 1100-01)).

USCIS argues Plaintiffs "unquestionably seek to gain priority over others who have been waiting longer or have earlier priority dates, without consideration to the agency's competing obligations," tilting the fourth TRAC factor in its favor. Reply at 8. Plaintiffs argue they are not seeking to "skip the line," but instead "seek only the timely adjudication of their petition within a reasonable timeframe." Opp. at 28. Plaintiffs distinguish between "Final Action Dates" and "Dates for Filing," suggesting that USCIS's current processing of the Petition is not following the agency's own "timeline" that allows for advance filing of documentation. Id. Plaintiffs conclude that USCIS can therefore approve the Petition now before a visa becomes available, allowing them to prepare necessary documents. Id. at 28-29; see Motion at 11.

The Court cannot find that granting Plaintiffs relief would not disadvantage others. Earlier adjudication of Plaintiffs' Petition only unavoidably delays adjudication of others' I-130 petitions even if a visa would become available no earlier for Plaintiffs—Plaintiffs' Petition would be adjudicated earlier of other similarly situated applicants merely because Plaintiffs sued. In re Barr Lab'ys, Inc., 930 F.2d 72, 75-76 (D.C. Cir. 1991) (reasoning mandamus relief was inappropriate under TRAC when delay stemmed from a "resource-allocation issue," and relief would "put[] [petitioner] at the head of the queue simply mov[ing] all others back one space

and produc[ing] no net gain"). Furthermore, the Petition is not part of a discretionary program that USCIS has so far refused to apply or decide eligibility—the Petition must be processed, only its timing is at issue. Cf. Islam, 32 F. Supp. 3d at 1073-74 (weighing fourth TRAC factor in plaintiff's favor where "[plaintiff-applicant for exemption to INA terrorist inadmissibility provisions] asks only that defendants, regardless of whether they ultimately invoke an exemption to his apparent inadmissibility, make a decision and process his application."). It would also be a departure from USCIS's asserted "rule of reason."

In addition, where Plaintiffs cast their request as an effort to align USCIS with the Department of State's "efforts to ensure applicants are prepared, reducing bottlenecks," their claim falls beyond the scope of relief available to them. In particular, Plaintiffs cannot impose a "timeline" on the processing of others' I-130 petitions through this action. Plaintiffs effectively seek reallocation of government resources, intruding into USCIS's choice of priorities in a way "ordinarily beyond the power of mandamus" for a claim under the APA. Illinois v. Ferriero, 60 F.4th 704, 715 (D.C. Cir. 2023); see Indep. Min. Co., 105 F.3d at 507 (noting "the Supreme Court has construed a claim seeking mandamus under [Mandamus Act], 'in essence,' as one for relief under § 706 of the APA"); Hells Canyon Pres. Council v. U.S. Forest Serv., 593 F.3d 923, 932 (9th Cir. 2010) (citing Norton v. S. Utah Wilderness All., 542 U.S. 55, 62-65 (2004)) ("judicial review [under 5 U.S.C. §706(1)] of actions alleged to be unlawfully withheld or unreasonably delayed extends only to 'discrete' actions, such as rules, orders, licenses, sanctions, and relief").

Accordingly, the fourth TRAC factor decidedly favors USCIS.

5. Weighing Factors

Because of the strength of the fourth factor favoring USCIS, the balance of the TRAC factors favors USCIS. Although the first factor is often the "most

important," In re A Cmty. Voice, 878 F.3d at 786; the fourth factor can overcome the remaining factors when granting a plaintiff relief would amount to an order to have the plaintiff jump the line. See Mashpee Wampanoag, 336 F.3d at 1100; see also Jain, 2021 WL 2458356, at *2. Here, factors one, two, three, five, and six are essentially neutral. Even were the Court to consider the third and fifth factors to slightly favor Plaintiffs, they would not overcome the fourth factor here. See R., 2023 WL 9197564, at *5; see also Beyene v. Napolitano, 2012 WL 2911838, at *8 (N.D. Cal. July 13, 2012) (holding third and fifth factors weakened when there is "no guarantee" in the outcome even were relief sought by plaintiff to be granted).

The Court finds USCIS has met its burden to show there is no genuine dispute of material fact as to the reasonableness of the delay in processing the Petition and further finds, considering the TRAC factors, that USCIS is entitled to judgment as a matter of law.

## VI.

## ORDER

For the foregoing reasons, the Court finds that there is no genuine dispute of material fact and USCIS is entitled to judgment as a matter of law as the delay in processing the Petition here is not unreasonable. As such, the Motion (Dkt. 38) is GRANTED. Judgment shall be entered in favor of USCIS and directing that this action be closed.

Dated: December 05, 2024__

JOHN D. EARLY
United States Magistrate Judge